UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA PUBLIC FACILITIES AUTHORITY** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 08-368-FJP-DLD** |
| **THE BANK OF NEW YORK TRUST COMPANY, N.A., ET AL** | |

**MAGISTRATE JUDGE'S REPORT**

This matter is before the court on a motion to remand filed by Louisiana Public Facilities Authority (LPFA) (rec. doc. 12). The motion to remand is opposed by both The Bank of New York Trust Company, N.A. (BNY) and Bayerische Hypo-Und Vereinsbank AG (Vereinsbank) (rec. docs. 18 and 19). Defendants removed this matter based on diversity jurisdiction. 28 U.S.C. §1332. The issue before the court is whether LPFA is an alter ego of the state so as to preclude it from being a "citizen" of the state for purposes of diversity jurisdiction.

**Background**

The Louisiana Public Facilities Authority (LPFA) is a public trust and public corporation created by an Indenture of Trust dated August 21, 1974, pursuant to the Public Trust Act, La. R.S. 9:2341, *et seq*. The purpose of LPFA is to further education, healthcare, economic development, and job creation in Louisiana (rec. doc. 1-2). One of the ways LPFA fulfills its mission is by making post-secondary education more accessible and affordable by providing discounted education loans to students and parents. Id. The low cost education loans are made possible by the issuance of tax-exempt bonds as

auction rate securities, which are, in essence, municipal bonds with a long-term nominal maturity for which the interest rate is reset through auctions typically held every 35 days. Id.

On February 1, 1999, LPFA entered into an Indenture of Trust ("Indenture") with Bank One, Louisiana, N.A. (Bank One), which provided that Bank One would serve as the Trustee.[1]  The Indenture also charged Bank One with receiving all proceeds from the sale of the bonds issued by LPFA to finance student loans and with the responsibility of prudently investing the bond proceeds. Id.  Between 1999 and the present, LPFA issued numerous bonds pursuant to the Indenture and deposited the bond proceeds with Bank One.  In an effort to prudently invest the bond proceeds, on February 28, 2002, Bank One entered into a PSA Master Repurchase Agreement with Vereinsbank (Repurchase Agreement). The Repurchase Agreement allowed Bank One to invest LPFA bond proceeds by purchasing securities from Vereinsbank, and Vereinsbank guaranteed a 0.46% return on the bond rate.  LPFA acknowledged the Repurchase Agreement and its obligations under the agreement.  The BNY later became successor Trustee to Bank One and assumed all rights and obligations of Bank One under the Indenture and Repurchase Agreement.

As a result of the credit crisis in early 2008, LPFA experienced difficulty in selling certain bonds issued for the purpose of financing student loans. In an effort to make the bonds seem more attractive, LPFA and BNY entered into a Fourteenth Supplemental Indenture of Trust (the Fourteenth Indenture), which provided for a greater rate of return

---

[1] The parties executed numerous amendments to the Indenture that controlled the relationship between the parties.

(an increased bond rate) for investors who purchased bonds issued by LPFA. Because the Repurchase Agreement required Vereinsbank to pay BNY 0.46% above the bond rate, the Fourteenth Indenture affected Vereinsbank's obligations under the Repurchase Agreement.

Vereinsbank notified both BNY and LPFA that they were in default of the Repurchase Agreement because they did not notify Vereinsbank prior to executing the Fourteenth Indenture, which adversely affected Vereinsbank. Vereinsbank gave both parties until March 4, 2008, to cure the default. On February 29, 2008, LPFA and BNY executed a First Amendment to the Fourteenth Supplemental Indenture (Amendment), which stated that the Amendment would not impact Vereinsbank's obligations under the Repurchase Agreement. On that same day, LPFA notified Vereinsbank of the Amendment and agreed to reimburse Vereinsbank for the amount inadvertently overpaid as a result of the Fourteenth Amendment. LPFA believed the Amendment and the offer of reimbursement cured the default of the Fourteenth Supplemental Repurchase Agreement. On March 4, 2008, Vereinsbank notified both LPFA and BNY that their default of the Repurchase Agreement had not been cured and that it was terminating the Repurchase Agreement. Additionally, Vereinsbank returned all monies held under the investment agreement to the BNY.

As a result of Vereinsbank's decision to terminate the Repurchase Agreement, LPFA brought suit against both Vereinsbank and BNY on April 8, 2008, in the 19th Judicial District Court, East Baton Rouge Parish, State of Louisiana (rec. doc. 1-2). LPFA alleges that Vereinsbank's decision to terminate the Repurchase Agreement was not based on LPFA's failure to cure the default, but rather was based on Vereinsbank's determination that the Repurchase Agreement was no longer profitable due to adverse market conditions.

LPFA alleges that Vereinsbank's decision to terminate the Repurchase Agreement constitutes bad faith breach of contract, entitling LPFA to specific performance and damages, including attorneys' fees and costs. Additionally, LPFA brought suit against BNY for damages, in the event that the BNY failed to cure its alleged default under the Repurchase Agreement, which resulted in Vereinsbank's termination of the Agreement.

On June 20, 2008, Vereinsbank removed this matter based on diversity jurisdiction (rec. doc. 1), and on July 9, 2008, BNY joined in the removal (rec. doc. 6). The notice of removal alleges that Vereinsbank is a German banking corporation, with its principal place of business in Germany; BNY is a United States banking association, with its principal place of business in New York; and LPFA is a Louisiana company with its principal place of business in Louisiana (rec. doc. 1). The notice of removal also alleges that plaintiff seeks damages in an amount exceeding $75,000 for bad faith breach of the Repurchase Agreement, costs, and attorneys' fees.

**Argument of Parties**

Plaintiff argues that this court does not have subject matter jurisdiction over this matter due to the lack of diversity between the parties; therefore, this matter should be remanded to state court. Plaintiff contends that it is an alter ego of the state and, therefore, is not a citizen of the state for purposes of diversity jurisdiction. Based on the multi-factor test for determining whether an entity is an arm-of-the-state or a private citizen established by the Fifth Circuit in *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir. 1983), plaintiff argues that it is not a "citizen" of the State of Louisiana. In support of its position that it is an alter ego of the state, plaintiff relies most heavily on the Louisiana Supreme Court's holding that LPFA , "a public corporation, as defined by statute

and created for a diversity of purposes, cannot be deemed a private citizen." *LPFA v. Foster*, 795 So.2d 288 (La. 9/18/01). In further support of its position, plaintiff also argues that it is concerned with the statewide purpose of "promoting, encouraging, and furthering the accomplishment of all activities which are or may become of benefit to the State of Louisiana and which have public purpose; that it has limited financial autonomy as it is required to submit its proposed annual budget to Louisiana's Joint Legislative Committee on the Budget for approval and cannot incur expenditures that deviate from the approved budget; that its ability to manage itself is limited to the bylaws approved by the Governor and the board of trustees appointed by the Governor; that it is subject to state laws regarding open meetings, public bids, and public records and its trustees are subject to Louisiana's Code of Ethics and must take the oath of office required of public officials.

Both Vereinsbank and BNY argue that the plaintiff is a citizen of the State of Louisiana, and, therefore, diversity jurisdiction exists. Defendants agree that the factors established by the Fifth Circuit govern whether an entity is an alter ego of the state. Defendants argue, however, that the facts of this case show that LPFA, and not the state, is the real party in interest in this matter. Defendants point to several factors that they argue indicate that LPFA is independent from the state – specifically that LPFA has independent management authority[2], that it is financially autonomous[3], and that relevant

---

[2] Defendants argue that the following factors support their argument that LPFA has independent management authority: LPFA has the authority to enter into contracts (Indenture, 3.1(b)), hold title to property acquired by it and the trustees are vested with exclusive management and control of the property (Indenture, §7.1(n)); pay all of its operating expenses from self-generated funds (Indenture, §7.1(l)), hire and fire employees (Indenture, §6.18), sue and be sued, hire its own counsel, and compromise litigation on its own behalf (Indenture, §6.18).

[3] Defendants argue that the following factors support their argument that LPFA is financially autonomous: its funding is derived from application and closing fees from the issuance of bonds and from investment earnings, not from the State (*State v. Foster, supra);* it is solely responsible for its own debts; it

state statutes indicate that it is independent agency[4]. For these reasons, defendants argue that LPFA is separate and distinct from the state and should be considered a citizen of the State of Louisiana for purposes of diversity jurisdiction.

**Law and Discussion**

The removal statute, 28 U.S.C. §1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007); *Shamrock Oil & Gas Corp. V. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Remand is proper if at any time the court lacks subject matter jurisdiction. See 28 U.S.C. §1447(c). The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. Of Texas, Inc.,* 351 F.3d 636 (5th Cir. 2003), citing *Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir.1998).

The first requirement under 28 U.S.C. §1332 is that the parties be of diverse citizenship, which must exist at the time the action is commenced and at the time of removal to federal court. *Coury v. Port*, 85 F.3d 244 (5th Cir. 1996). Diversity jurisdiction exists in cases involving "citizens of different states" where the amount in controversy exceeds $75,000. 28 U.S.C. §1332. The notice of removal alleges that Vereinsbank is a German banking corporation, with its principal place of business in Germany; BNY is a

---

has the right to acquire property (Indenture, 8.2).

[4] LPFA is granted the right by statute to incur debt and contract obligations; to sue and be sued; to have a corporate seal; to do and perform all acts in a corporate capacity and in a corporate name. See La. R.S. 9:2341D. Further, LPFA is solely responsible for debts or liabilities incurred and bonds issued. See La. R.S. 9:2344B, 2347A(2).

United States banking association, with its principal place of business in New York; and LPFA is a Louisiana company with its principal place of business in Louisiana. LPFA argues that it operates as an alter ego of the state and, therefore, cannot be considered a "citizen" of the state for purposes of establishing diversity jurisdiction. Neither a state nor any arm-of-the-state constitutes a "citizen" for purposes of diversity jurisdiction. *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131, 1132 (5th Cir. 1983). Likewise, state agencies that are the alter ego of the state are not citizens for purposes of diversity jurisdiction. However, if the state agency is an independent one, separate and distinct from the state, the district court can properly proceed to the merits. *Id.* Thus, the motion to remand turns on whether LPFA is an alter ego of the state.

"In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit." Id. The Fifth Circuit in *Tradigrain v. Mississippi State Port Authority*, supra, adopted the following test for determining the agency's status: (1) whether the agency has been granted the right to hold and use property; (2) whether it has the express authority to sue and be sued in its corporate name; (3) the extent of its independent management authority, i.e., whether the agency can make its own hiring decisions, has the power to enter into contracts and to engage its own counsel; and (4) the treatment of the agency by state courts. The Fifth Circuit noted that the "factor that subsumes all others" is how the agency is treated by the state courts. Id. Other factors to consider are whether the state is responsible for the agency's debt; whether the agency is primarily concerned with local, as opposed to statewide problems; and the degree of general financial autonomy of the agency. In analyzing these factors, some will suggest that the agency is a "citizen" and

others will suggest that the agency is an alter ego of the state; therefore, the court must balance the factors against each other in reaching a conclusion. Id., at 1133.

The court looks first at how LPFA has been treated by the Supreme Court of Louisiana. In *LPFA v. Foster*, 796 So.2d 288 (La. 9/18/01), LPFA challenged the constitutionality of Acts 915, 1238, 1323 of the 1999 Regular Session of the Louisiana Legislature and Act 11 of the 2000 Second Extraordinary Legislative Session, all of which affected the statutory scheme governing LPFA. LPFA argued that Act 1238 violates La. Const. Art. I, §23 because it impairs the Indenture of Trust by changing the number of trustees, changes the method of submitting prospective trustees to the governor, and terminates all present trustees. La. Const. Art. I, §23 prohibits the enactment of laws impairing the obligations of contracts; however, the protections provided in La. Const. Art. I, §23 are for the citizens and not for the state. Thus, the legislature can pass laws impairing its own rights, as long as private rights are not infringed. LPFA argued in this case that it was a private citizen, so it would be afforded the protections of La. Const. Art. I, §23. The Supreme Court analyzed whether LPFA was a private citizen or a public entity by reviewing the statutes creating LPFA and concluded that LPFA is a "public entity," subject to legislative regulation, and, as such, it is not protected by the Louisiana Constitution[5]. Id., at 298.

---

[5] In reaching its conclusion, the Louisiana Supreme Court considered the following factors persuasive: LPFA is a public trust created under the authority of state law; it was created to "promote, encourage, and further the accomplishment of all activities which are or may become of benefit to the State of Louisiana and which have a public purpose; it is required to submit an annual operating budget to the Joint Legislative Committee on the Budget for review and approval; it cannot incur an expenses or obligations outside of the approved budget; it is subject to state laws governing public records, open meetings, public bids, and governmental ethics; it is required to have its bonds approved by the State Bond Commission; and it is subject to legislative audit. *LPFA v. Foster*, 795 So.2d at 291-298.

Although the Fifth Circuit has held that the treatment of an entity by the state court is the "factor that subsumes all others," it is not the only factor for consideration. The court must also consider the evidence related to the other factors established by the court in *Tradigrain v. Mississippi State Port Authority,* supra, one of which is whether LPFA has been granted the right to hold and use property. LPFA is authorized to hold and use property, but its authorization is not without restrictions. It may hold and use property as needed in instituting, furnishing, providing, or supplying facilities, improvements, and services related to the public purposes specified in the Indenture. Indenture, §3.1(b). LPFA is charged with management and control of the properties and can enter into contracts in connection with its management, but all contracts for construction, labor, equipment, material, or repairs must be awarded to the lowest bidder pursuant to the Public Contract Law. See La. R.S. 9:2343E. Although LPFA may hold and use property and enter into contracts, the authority granted to the trustees by the Indenture requires LPFA to manage the estate and to further the public purpose of the authorized project solely for the use and benefit of the beneficiary, the State of Louisiana. The fact that the property held, managed, and maintained by LPFA is solely for the benefit of the State of Louisiana, and not for the benefit of a private entity indicates that it does not operate independently of the state. Indenture, 3.1(h), 7.1(n).

Another factor to consider is whether LPFA has the express authority to sue and be sued in its corporate name. LPFA is authorized to sue and be sued, which would weigh in favor of LPFA operating independently of the state. See La. R.S. 9:2341D.

Yet another factor is the extent of LPFA's independent management authority. LPFA is governed by bylaws adopted for the orderly administration and regulation of its

affairs. The bylaws must be submitted to the Governor for approval. See La. R.S. 9:2341C and E(4). The Governor has the power to veto all or part of the proposed bylaws. Id. LPFA is governed by trustees, who are appointed from each congressional district by the Governor and confirmed by the Senate. The trustees are compensated on a per diem rate and are reimbursed for their expenses incurred in the performance of their duties at the rates applicable to state officials. See La.R.S. 9:2343A(4). Although LPFA has the authority to retain its own legal representation, rather than being represented by the attorney general, any attorneys' fees in connection with the issuance of any obligations, notes, or other evidences of indebtedness is subject to approval of the attorney general. See La. R.S. 9:2341E(6). Also, LPFA is subject to state laws regarding public records, open meetings, and public bids, bond validation procedures, and its trustees are subject to the Louisiana Code of Ethics and must take the oath of office required of public officials. See La. R.S. 9:2341(D) and 2343. The state's ultimate control over LPFA's management authority indicates that LPFA does not operate independently from the state.[6]

Whether LPFA is responsible for statewide problems is another consideration. LPFA is concerned with local and statewide problems and is permitted to issue obligations and to provide funds for the furtherance and accomplishment of any authorized public function, which may include the creation of services and facilities addressing healthcare, financial, correctional, water treatment, solid waste, educational, transportation, cultural and civic, community development, industrial and economic development, antipollution, and airport

---

[6] Other evidence that LPFA does not have independent management authority are the restrictions on its power to enter into contracts by the annual budget and by Public Contract Law. See La. R.S. 9:2343E.

and water port needs. See La. R.S. 9:2341(B). In this case, LPFA is concerned with the statewide matter of providing affordable education for the citizens of Louisiana. LPFA's overall purpose and its specific activity in this case indicate that it is an alter ego of the state.

Finally, the court considers whether LPFA is financially autonomous from the state. Although LPFA is solely responsible for its obligations, debts, and liabilities, LPFA must present its annual operating budget to the Joint Legislative Committee on the Budget for its review and approval. See La. R.S. 9:2344 and 2346C. LPFA is prohibited from incurring any expense or obligating itself for items which deviate from its approved budget. LPFA is subject to legislative audit. See La. R.S.9:2346. Additionally, prior to the issuance and delivery of bonds, LPFA must seek approval from the State Bond Commission. See La. R.S. 2341E(2)(a). The fact that the state regulates LPFA by requiring that it obtain approval of its budget and by restricting its expenses and obligations to that budget indicates that it is an alter ego of the state.

Despite these indications of LPFA's status as an alter ego of the state, there are a number of factors which, on the surface, seem to indicate that LPFA operates independently from the state. For example, LPFA is responsible for its obligations; it can own property, sue and be sued in its own name; and it can retain its own counsel. A closer review of the Indenture and the statutes governing the LPFA, however, show that the extensions of authority are ultimately controlled and closely regulated by the state. LPFA is governed by trustees appointed by the Governor, has its bylaws approved, obtains approval of its budget (which limits its ability to enter into obligations), has its bonds

approved by the State Bond Commission, and has its attorneys' fees approved by the attorney general.  Additionally, LPFA is concerned with statewide problems, and the Louisiana Supreme Court in *LPFA v. Foster*, 795 So.2d 288 (La. 2001) designated LPFA as a "public entity."  Each of these factors taken in isolation may not be conclusive, but together they weigh in favor of a finding that LPFA operates as an alter ego of the state.

Thus, because LPFA operates as an alter ego of the state, it is not a "citizen" of Louisiana and diversity of citizenship is lacking in this case and this matter should be remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana for further proceedings.

Plaintiff requests the payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal as allowed by 28 U.S.C. §1447(c). Section 1447(c) provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The award is within the discretion of the district court and is to be guided by the standard that, "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonably basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).  "Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 711. An analysis of whether LPFA is an alter ego of the state requires a weighing and balancing of several factors.  Although the Louisiana Supreme Court's decision in *LPFA v. Foster,* supra, gives guidance to the Court, it is not completely dispositive on the issue. Thus, defendants did not lack an objectively reasonable basis for removing this matter

considering all of the factors that had to be analyzed to reach the Court's conclusion, and LPFA's request for attorneys' fees and costs should be denied. Accordingly,

**IT IS RECOMMENDED** that the motion to remand (rec. doc. 12) should be **GRANTED**, and this matter remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

**IT IS FURTHER RECOMMENDED** that the request for attorneys' fees and costs should be **DENIED.**

Signed in Baton Rouge, Louisiana, on March 18, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LOUISIANA PUBLIC FACILITIES AUTHORITY**

**VERSUS**

**THE BANK OF NEW YORK TRUST COMPANY, N.A., ET AL**

**CIVIL ACTION**

**NUMBER 08-368-FJP-DLD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 18, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**